UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
GIUFFRE MOTOR CAR CO., LLC d/b/a GIUFFRE KIA,
GIUFFRE HYUNDAI, LTD. and JOHN GIUFFRE,

                                                          Case No.:15-cv-4514(MKB)(VVP)

                           Plaintiffs,

        -against-                          COMPLAINT

KIA MOTORS AMERICA, INC.,
HYUNDAI MOTOR AMERICA, and
HYUNDAI CAPITAL AMERICA, INC.

                           Defendants.
--------------------------------------------------------------------X

      Plaintiffs Giuffre Motor Car Co. LLC. d/b/a Giuffre Kia ("Giuffre Kia"), Giuffre

Hyundai, Ltd. ("Giuffre Hyundai") and John Giuffre, by their attorneys, Cyruli Shanks Hart &

Zizmor, LLP., for their Complaint against Defendants Kia Motors America Inc. ("Kia Motors"),

Hyundai Capital America ("Hyundai Capital") and Hyundai Motor America ("Hyundai Motors")

says:

THE PARTIES

    **1.**    Plaintiff Giuffre Kia is and was, at all times relevant to this action, a limited

liability company organized and existing under the laws of the State of New York, with its

principal place of business at 1626 86th Street, Brooklyn, New York 11214.

    2.    Plaintiff Giuffre Hyundai is and was, at all times relevant to this action, a limited

liability company organized and existing under the laws of the State of New York, with its

principal place of business at 8904 5th Avenue, Brooklyn, New York 11209.

    3.    Plaintiff John Giuffre is and was, at all times relevant to this action, an individual

residing in the State of New York.

1

4.     Upon information and belief, Defendant Kia Motors is a foreign corporation, authorized to conduct business in New York, that does or has transacted business throughout the United States, including the State of New York, and is the sole distributor of Kia vehicles in the United States, with its primary office located at 111 Peters Canyon Road, Irvine, California 92606.

5.     Upon information and belief, Defendant Hyundai Motors is a foreign corporation, authorized to conduct business in New York, that does or has transacted business throughout the United States, including the State of New York, and is the sole distributor of Hyundai vehicles in the United States, with its primary office located at 10550 Talbert Avenue, Fountain Valley, California 92708.

6.     Upon information and belief, Defendant Hyundai Capital is a foreign corporation, authorized to conduct business in New York, that does or has transacted business throughout the United States, including the State of New York, with its primary office located at 3161 Michelson Drive, California 92612.

7.     Hyundai Capital is the captive finance arm, and an affiliate of, Hyundai Motors and Kia Motors in the United States.

8.     Giuffre Kia was principally engaged in the sales and service of new and used vehicles, including new Kia branded vehicles wholesaled and distributed by Kia Motors to dealers nationwide, including Giuffre Kia.

9.     Giuffre Kia is or was a registered New York State motor vehicle dealer pursuant to New York Vehicle and Traffic Law (hereafter "VTL") § 415 and a franchised motor vehicle dealer within the meaning of VTL § 462(7).

10.     Giuffre Kia is or was an automobile dealer and Kia Motors is an automobile manufacturer within the meaning of the Automobile Dealers Day in Court Act ("ADDCA"), 15 U.S.C. §§ 1221-1226.

11.     Kia Motors is a manufacturer within the meaning of VTL § 462(9).

12.     Kia Motors is engaged in the manufacture, distribution and sales of motor vehicles to its franchised Kia motor vehicle dealerships in interstate commerce pursuant to its standard Sales and Service Agreement.

13.     Kia Motors' transaction of business within the State of New York has given rise to the causes of action complained of herein.

14.     Giuffre Hyundai was principally engaged in the sales and service of new and used vehicles, including new Hyundai branded vehicles wholesaled and distributed by Hyundai Motors to dealers nationwide, including Plaintiff.

15.     Giuffre Hyundai is or was a registered New York State motor vehicle dealer pursuant to VTL § 415 and a franchised motor vehicle dealer within the meaning of VTL § 462(7).

16.     Giuffre Hyundai is or was an automobile dealer and Hyundai Motors is an automobile manufacturer within the meaning of the ADDCA, 15 U.S.C. §§ 1221-1226.

17.     Hyundai Motors is a manufacturer within the meaning of VTL§ 462(9).

18.     Hyundai Motors is engaged in the manufacture, distribution and sales of motor vehicles to its franchised Hyundai motor vehicle dealerships in interstate commerce pursuant to its standard Sales and Service Agreement.

19.     Hyundai Motors' transaction of business within the State of New York has given rise to the causes of action complained of herein.

20.     Subsequent to the filing of the instant action, and prior to effectuating service of process, Hyundai Capital commenced an action in the Supreme Court of the State of New York, County of Kings, under Index No. 505847/2015 against various individuals seeking collection of amounts allegedly due from Giuffre Hyundai, Giuffre Kia and John Giuffre alleging fraudulent conveyance.

21.     Hyundai Capital is the captive finance arm of Hyundai Motors as described by Hyundai Capital in a prior lawsuit as follows: Hyundai Capital is a member of the Hyundai Motor Group family of companies, and was established to support the financial services needs of Hyundai Motor America and Kia Motors America, Inc.  Towards that end, Hyundai Capital offers financing services to Hyundai and Kia dealers throughout the United States, including consumer vehicle, dealer inventory, facility and working capital financing.

22.     As admitted by Hyundai Capital, Hyundai Capital was not established to support the financial needs of the independent KIA and Hyundai dealerships, but rather to compliment, implement, and carry out the needs and objectives of its affiliates Hyundai Motors and KIA.

23.     As such Hyundai Capital is distinctive from an independent finance source providing financing to customers, including dealerships, for the benefit of its customers.

24.     In reality, the majority of Kia and Hyundai dealers are reliant upon the cooperation and assistance of Hyundai Capital in connection with the financial operations of their dealerships.

25.     In the instant case, the defendants have failed to exhibit the good faith required by statutory and case law, and have instead worked together in a wrongful course of conduct designed to drive plaintiffs out of business, or otherwise cause or increase liability to the plaintiffs.

26.     Hyundai Capital is a proper and necessary defendant in this action as, had it not been for the wrongful actions of Hyundai Motors and Kia Motors as alleged below, no monies would have been owed by plaintiffs to Hyundai Capital; Hyundai Motors' and Kia Motors' captive finance company.

27.     The damages sought by the plaintiffs herein against Hyundai Motors and Kia Motors will be more than sufficient to satisfy the obligations of plaintiffs to Hyundai Capital.

28.     On or about July 2007, for due consideration, Giuffre Kia and Kia Motors entered into a Kia Sales and Service Agreement authorizing Giuffre Kia to operate a Kia franchise (the "Kia Dealership") to sell and service new Kia automobiles and related automotive accessories in Brooklyn, New York (the "Kia Franchise Agreement").

### FACTUAL ALLEGATIONS
### PERTINENT TO ALL CLAIMS

29.     At that time Giuffre Kia was the only authorized Kia dealer in Brooklyn.

30.     John Giuffre was the dealer principal and sole member of Giuffre Kia.

31.     Since July 2007 John Giuffre was also the dealer principal and sole member of Giuffre Kia.

32.     In September 1998, for due consideration, Giuffre Hyundai and Hyundai Motors entered into a Hyundai SSA authorizing Giuffre Hyundai to operate a Hyundai franchise (the "Hyundai Dealership") to sell and service new Hyundai automobiles and related automotive accessories in Brooklyn, New York (the "Hyundai Franchise Agreement").

33.     At that time Plaza Hyundai was the only authorized Hyundai dealer in Brooklyn.

34.     Plaza Hyundai is part of a group of commonly owned dealerships (the "Plaza Group")

5

35.     Since 1998 John Giuffre was also the dealer principal and sole member of Giuffre Hyundai.

36.     Hyundai Motors, Kia Motors and Hyundai Capital are affiliated corporations.

37.     Hyundai Capital is the financing arm of both Hyundai Motors and Kia Motors.

38.     Hyundai Capital provided floorplan and capital financing to both Giuffre Hyundai and Giuffre Kia.

39.     John Giuffre was also the dealer principal of a Mazda dealership ("Giuffre Mazda").

40.     Hyundai Capital also provided floorplan and capital financing to Giuffre Mazda.

41.     John Giuffre, Giuffre Hyundai, Giuffre Kia, Giuffre Mazda (the "Giuffre Parties"), all cross-guaranteed the financing of all of the dealerships to Hyundai Capital.

42.     In December 2012 Hyundai Motors served a notice of termination of the Hyundai Franchise Agreement with Giuffre Hyundai, to be effective in March 2013.

43.     Giuffre Hyundai's financing with Hyundai Capital was contingent upon Giuffre Hyundai continuing to operate as the Hyundai Dealership.

44.     As a result of the termination of the Hyundai Franchise Agreement, Hyundai Capital declared all loans to Giuffre Hyundai immediately due and payable.

## FIRST CAUSE OF ACTION AGAINST HYUNDAI MOTORS
### (Violation of NY VTL §460 et. seq.)

45.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

46.     In January 2013 Hyundai Motors offered to enter in an agreement with Giuffre Hyundai whereby Hyundai Motors would purportedly agree to consider a proposed sale of the Hyundai Dealership by Giuffre Hyundai.

47.     As a condition to Hyundai Motors' offer, the proposed agreement contained onerous and egregious provisions, waiving many rights of Giuffre Hyundai, in violation of the Hyundai Franchise Agreement and VTL.

48.     Giuffre Hyundai refused to sign the proposed agreement.

49.     Soon thereafter, Giuffre Hyundai received a call from a representative of the Plaza Group seeking to purchase the Hyundai Dealership.

50.     This offer was rejected by Giuffre Hyundai.

51.     Giuffre Hyundai was then able to secure a purchaser of the Hyundai Dealership for a sale price of $2,650,000.00.

52.     The sale of the Hyundai Dealership was subject to the approval of Hyundai Motors.

**53.**     The prospective purchaser of the Hyundai Dealership (the "Hyundai Purchaser") had been operating automotive dealerships for many years and was a dealer principal of other franchised dealerships.

54.     The Hyundai Purchaser was a qualified purchaser for the Hyundai Dealership.

55.     If the Hyundai Dealership had been sold to the Hyundai Purchaser it would have realized sufficient proceeds to satisfy the monies then due to Hyundai Capital from Giuffre Hyundai and John Giuffre.

56.     If the Hyundai Dealership had been sold to the Hyundai Purchaser then the Hyundai Purchaser would have taken over Giuffre Hyundai's Brooklyn point.

57.     Upon information and belief, Hyundai Motors was desirous of awarding the Plaza Group with a second Hyundai dealership in Brooklyn.

58.     Upon information and belief, Hyundai Motors wanted the Plaza Group to have the only Hyundai dealerships in Brooklyn.

59.     Hyundai Motors refused to accept the application of the Hyundai Purchaser for the purchase of the Hyundai Dealership.

60.     As a result of the termination, Giuffre Hyundai's Brooklyn former point then became an "open point" to Hyundai Motors.

61.     Hyundai Motors then awarded the Plaza Group Giuffre Hyundai's former Brooklyn point.

62.     As a result of Hyundai Motors refusing to accept the application of the Hyundai Purchaser for the purchase of the Hyundai Dealership, the Plaza Group now owns and operates the sole Hyundai dealerships in Brooklyn.

63.     As a result of Hyundai Motors refusing to accept the application of the Hyundai Purchaser for the purchase of the Hyundai Dealership, Giuffre Hyundai and John Giuffre were unable to sell the Hyundai Dealership.

64.     As a result of the inability to sell the Hyundai Dealership to the Hyundai Purchaser, Giuffre Hyundai and John Giuffre were unable to satisfy the outstanding monies due to Hyundai Capital.

65.     Hyundai Capital then pursued collection on various Hyundai loans against John Giuffre and Giuffre Hyundai.

66.     Hyundai Motors' refusal to accept the application of the Hyundai Purchaser for the purchase of the Hyundai Dealership prevented John Giuffre and Giuffre Hyundai from obtaining the fair value of the Hyundai Dealership.

67.     Hyundai Motors' refusal to accept the application of the Hyundai Purchaser for the purchase of the Hyundai Dealership was an unreasonable restriction on the sale or transfer of the Hyundai Dealership.

68.     Hyundai Motors' actions were in violation of the New York Franchised Dealer Act §466.

69.     Hyundai Motors is liable to Giuffre Hyundai and John Giuffre for the monies owed to Hyundai Capital which liability would have been satisfied but for Hyundai Motors' violation of the VTL §466,

70.     Hyundai Motors is liable to Giuffre Hyundai and John Giuffre for the excess monies which would have been realized by Giuffre Hyundai after satisfying Hyundai Capital but for Hyundai Motors' violation of VTL 466, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $2,650,000.00.

SECOND CAUSE OF ACTION AGAINST HYUNDAI MOTORS
(Violation of NY VTL §460 et. seq.)

71.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

72.     Prior to Hyundai Motors' termination of the Hyundai Franchise Agreement Hyundai Capital wrongfully demanded that Giuffre Hyundai make significant changes to the

Hyundai Dealership facility to accommodate distinct showroom facilities for Hyundai Motors' upscale Equus model line.

73.     Hyundai Motors' demand was in violation of VTL §460 et. seq. including, but not limited to, §463 (2)(c)(3).

74.     Hyundai Motors then arranged for Hyundai Capital to finance the changes to the Hyundai Dealership.

75.     The monies claimed due by Hyundai Capital include those monies borrowed by Giuffre Hyundai as wrongfully required by Hyundai Motors.

76.     But for Hyundai Motors' wrongful imposition on Giuffre Hyundai to make significant changes to the Hyundai Dealership facility it would not have borrowed money, as arranged by Hyundai Motors, from Hyundai Capital.

77.     Hyundai Motors is liable to Giuffre Hyundai and John Giuffre for the monies owed to Hyundai Capital which loans were taken solely to satisfy Hyundai Motors' demands made in violation of VTL §463 (2)(c)(3).

78.     Hyundai Motors is liable to Giuffre Hyundai and John Giuffre for the excess monies which would have been realized by Giuffre Hyundai after satisfying Hyundai Capital but for Hyundai Motors' violation of VTL §463 (2)(c)(3, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $1,700,000.00.

### THIRD CAUSE OF ACTION AGAINST HYUNDAI MOTORS
(Violation of 15 U.S.C. §13 and Violation of NY VTL §460 et. seq.)

79.      Plaintiff's repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

80.     In 2010 Giuffre Hyundai became aware that Hyundai Motors was wrongfully providing advertising subsidies to other Hyundai franchisees competing in the same area as Giuffre Hyundai, including, but not limited to, Atlantic Hyundai, Millennium Hyundai, Advantage Hyundai and Plaza Hyundai.

81.     The subsidies given by Hyundai Motors to said dealers, and others, provided them with a financial, economic and competitive advantage not given to Giuffre Hyundai.

82.     The subsidies given by Hyundai Motors to said dealers had the effect of directly and indirectly lowering the price of vehicles and other commodities purchased by said dealers from Hyundai Motors

83.     The subsidies provided to said dealers, are in violation of the Robinson-Patman Price Discrimination Act and the VTL in that, inter alia, Hyundai Motors engaged in commerce, and in the course of such commerce, either directly or indirectly, discriminated in price between different purchasers of commodities of like grade and quality and said costs have tended to create a monopoly or to injure, destroy or prevent competition between Giuffre Hyundai and other dealers of  Hyundai Motors' products.

84.     In settlement of the threatened lawsuit by Giuffre Hyundai against Hyundai Motors, Hyundai Motors agreed to pay Giuffre Hyundai $600,000.00.

85.     Although the wrongs committed by Hyundai Motors concerned advertising subsidies, due to the nature of the limitations of the types of assistance that a franchisor may publicly provide its franchisees, Hyundai Motors required that the payment be deemed to be for a facility upgrade.

86.     Giuffre Hyundai and Hyundai Motors entered into a settlement agreement (the "Advertising Settlement").

87.     Due to the wrongful nature of Hyundai Motors' actions, it required the Advertising Settlement to be confidential.

88.     The Advertising Settlement also provided that the settlement funds were subject to reversal if the Hyundai Franchise Agreement were to be terminated.

89.     Following the termination of the Hyundai Franchise Agreement, Hyundai Motors withdrew $600,000.00 from Giuffre Hyundai's open parts account wrongfully claiming repayment of Advertising Settlement monies.

90.     Giuffre Hyundai maintains a claim against Hyundai Motors for the reversal of the settlement funds paid for the wrongful advertising subsidies.

91.     Giuffre Hyundai claim against Hyundai Motors for the wrongful advertising subsidies ripened by the reversal of the settlement funds paid for the wrongful advertising subsidies.

92.     Giuffre Hyundai is entitled to recover damages for $600,000.00 and treble damages pursuant to 15 U.S.C. §15, together with plaintiffs' costs of suit including a reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION AGAINST HYUNDAI MOTORS
### (Violation of NY VTL §460 et. seq.)

93.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

94.     Pursuant to VTL §463(2)(o)(1), following the termination of the Hyundai Dealership, Hyundai Motors was required to repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation.

95.     The funds realized from such repurchases were to be used to satisfy loan obligations from the Hyundai Dealership to Hyundai Capital.

96.     Had Hyundai Motors repurchased all remaining vehicle and parts inventory from the Hyundai Dealership at fair and reasonable compensation the Hyundai Dealership would have realized additional funds to satisfy loan obligations from the Hyundai Dealership to Hyundai Capital.

97.     Hyundai Motors failed to repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation.

98.     As a result of Hyundai Motors' failure to repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation Giuffre Hyundai and John Giuffre were unable to satisfy the outstanding monies due to Hyundai Capital.

99.     Hyundai Capital then pursued collection against John Giuffre and Giuffre Hyundai for various loans.

100.    Hyundai Motors' failure to repurchase all remaining vehicle and parts inventory from the Hyundai Dealership at fair and reasonable compensation was a breach of the VTL and the Hyundai Franchise Agreement.

101.    Hyundai Motors is liable to Giuffre Hyundai and John Giuffre for the monies owed to Hyundai Capital which loans would have been satisfied but for Hyundai Motors' wrongful failure repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation, but in no event less than $650,000.00.

## FIFTH CAUSE OF ACTION AGAINST HYUNDAI MOTORS
### (Violation of 15 U.S.C. §1221 et. seq. "ADDCA")

102.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

103.     Pursuant to the ADDCA, Hyundai Motors, as franchisor under the Hyundai Franchise Agreement, owed Giuffre Hyundai a duty to act in good faith in performing with or complying with the written Hyundai Franchise Agreement.

104.     The aforesaid acts of Hyundai Motors were in breach of the ADDCA.

105.     Giuffre Hyundai and John Giuffre are entitled to recover, in addition thereto, their attorney's fees and cost of suit pursuant to 15 U.S.C. §1222.

## SIXTH CAUSE OF ACTION AGAINST KIA MOTORS
### (Violation of NY VTL §460 et. seq.)

106.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

107.     On or about July 3, 2014, Kia Motors sent Giuffre Kia a 90 day notice of termination of the Kia Franchise Agreement (the "NOT").

108.     At that time Kia Motors had no other operating Kia franchises in Brooklyn.

109.     Upon information and belief, Kia Motors awarded a Kia franchise in Brooklyn to the Plaza Group in 2013.

110.     Upon information and belief, the Plaza Group had to purchase and renovate a facility in Brooklyn to begin operating his Kia dealership in Brooklyn.

111.     Pursuant to the NOT the termination of the Kia Franchise Agreement would occur in October 2014 (the "Original Termination Date").

112.    Upon information and belief, Kia Motors made the NOT effective as to Giuffre Kia on the Original Termination Date in anticipation of the Plaza Group starting operations in the fall of 2014.

113.    Giuffre Kia's financing with Hyundai Capital was contingent upon Giuffre Kia's continuing to operate as the Kia Dealership.

114.    Hyundai Capital then refused to continue to extend its regularly ongoing financing to Giuffre Kia for the operation of the Kia Dealership through the Original Termination Date.

115.    The refusal of Hyundai Capital to finance the operation of Giuffre Kia after the delivery of the NOT, but prior to the Original Termination Date, meant that Giuffre Kia would effectively cease operating prior to the Original Termination Date.

116.    The termination of the Kia Franchise Agreement would also result in Hyundai Capital declaring all loans immediately due and payable on the Original Termination Date.

117.    Pursuant to VTL §463 Giuffre Kia had the right to challenge such termination.

118.    Giuffre Kia considered challenging the notice of termination at that time as Giuffre Kia did not believe that there was a proper basis for the termination.

119.    Alternatively, Giuffre Kia considered selling the Kia Dealership.

120.    In July 2014, the Giuffre Parties concluded extensive negotiations with Hyundai Capital to resolve all outstanding issues between them.

121.    On or about July 30, 2014 Hyundai Capital and the Giuffre Parties entered into a settlement  agreement for the debts owed to Hyundai Capital (the "Hyundai Capital Settlement Agreement").

122.     Pursuant to the Hyundai Capital Settlement Agreement, Hyundai Capital agreed as follows:

123.     Hyundai Capital would forebear from pursuing any judgment against any of the Giuffre Parties for a specified period of time to enable Giuffre Kia to sell the Kia Dealership.

124.     The Giuffre Parties would pay Hyundai Capital $1,250,000.00 upon execution of the Hyundai Capital Settlement Agreement (the "Downpayment").

125.     Giuffre Kia would seek to sell the Kia Dealership for a price of $1,420,000.00.

126.     If the sale of the Kia Dealership were to occur prior to various dates in the fall of 2014, Hyundai Capital would accept a discounted amount in full settlement of the debt (the "Settlement Amount").

127.     The anticipated proceeds from the sale of the Kia Dealership, along with the Downpayment, would have been more than sufficient to pay the Settlement Amount.

128.     If the sale of the Kia Dealership did not occur by the deadline in the Hyundai Capital Settlement Agreement, the reduction of the debt, totaling hundreds of thousands of dollars at that time, would not be applied and Hyundai Capital could enter judgment against Giuffre Kia, Giuffre Hyundai and John Giuffre for the full amount then unpaid.

129.     At the time of the negotiation of the Hyundai Capital Settlement Agreement, the Giuffre Parties had already been negotiating with a potential purchaser of the Kia Dealership.

130.     At the time of the negotiation of the Hyundai Capital Settlement Agreement, the Giuffre Parties had also been negotiating with Kia Motors concerning a resolution of its NOT.

131.     On or about September 12, 2014 Giuffre Kia entered into an asset purchase agreement with 1626 86TH Street Auto LLC (the "Kia Purchaser") for the sale of the Kia Dealership for $1,420,000.00 (the "APA").

16

132.    The principal of the Kia Purchaser was Joshua Aronson ("Aronson").

133.    Aronson was a well-qualified buyer for the Kia Dealership.

134.    Upon information and belief Aronson, as dealer principal, had been approved for multiple Kia and/or Hyundai dealerships by both Kia Motors and Hyundai Motors, and operated those dealerships, both prior and subsequent to the APA.

135.    The sale of the Kia Dealership was subject to the approval of Kia Motors.

136.    On or about September 12, 2014 Giuffre Kia sent a copy of the APA to Kia Motors advising them of the sale and asking Kia Motors to send the Kia Purchaser an application for approval of the sale (the "Application").

137.    As a result of the negotiations between Giuffre Kia and Kia Motors, Giuffre Kia and Kia Motors entered into an interim settlement and extension agreement concerning Giuffre Kia's proposed sale of the Kia Dealership to the Kia Purchaser (the "Kia Motors Agreement").

138.    The purpose of entering into the Kia Motors Agreement was to extend the termination date to enable Giuffre Kia to submit the APA to Kia Motors for approval and provide sufficient time for Kia Motors to review and consider the APA for approval.

139.    Pursuant to the Kia Motors Agreement, Kia Motors agreed to extend the termination date to December 4, 2014 (the "Extended Termination Date") and to accept and consider the application of the Kia Purchaser.

140.    Upon information and belief the Plaza Group was still not yet ready to begin operations in the early fall of 2014.

141.    If Giuffre Kia had closed operations on the Original Termination Date pursuant to the NOT there would have been no Kia dealer in Brooklyn for an unknown period of time.

17

142.    Upon information and belief, following the execution of the Kia Motors Agreement, Kia Motors sent the Application to the Kia Purchaser.

143.    Pursuant to the Kia Motors Agreement, Kia Motors agreed to review the application of the Kia Purchaser and advise of its position no later than November 14, 2014 (the "Decision Date").

144.    One of the conditions required by Kia Motors to approve the Kia Purchaser was that the Kia Purchaser have an appropriate sales and appropriate service facility in which to operate once the Kia Purchaser closed on the purchase of the Kia Dealership.

145.    It was anticipated in the APA that the Kia Purchaser would assume the lease for the location in which Giuffre Kia operated its sales facility.

146.    The Kia Purchaser had the option of leasing Giuffre Kia's existing service facility or seeking an alternate location for the service facility.

147.    Upon information and belief the Kia Purchaser chose an alternate location for the service facility and entered into an agreement to purchase property with the right to terminate the agreement (the "Termination Right").

148.    Upon information and belief the Termination Right was for a thirty (30) day period.

149.    Upon information and belief prior to the expiration of the Termination Right, and prior to the Decision Date, Kia Motors unofficially contacted Aronson on several occasions and made it clear that it would not be approving the Application.

150.    Despite unofficially communicating with Aronson prior to the Decision Date, Kia Motors did not then decline the Application nor did Kia Motors advise Giuffre Kia that it had

communicated with Aronson on several occasions to make it clear that it would not be approving the Application.

151.    Upon information and belief Kia did not provide any basis for its informal decision that it would not be approving the Application.

152.    As the Decision Date approached Giuffre Kia contacted its liaison at Kia Motors on several occasions to inquire as to the status of the Application.

153.    The Kia Motors' liaison began to give equivocal and evasive responses.

154.    Upon information and belief due to Kia Motors making clear to Aronson that it would not be approving the Application, the Kia Purchaser exercised the Termination Right.

155.    Upon information and belief the Kia Purchaser then  notified Kia Motors that it terminated the contract to purchase the Service facility and it would, therefore, not have a service facility for a Kia Dealership if approved.

156.    On or about November 10, 2014, shortly before the deadline for Kia Motors to make a determination on the Application, Kia Motors sent a notice to the Kia Purchaser and Giuffre Kia noting that as the Kia Purchaser would not have a service facility Kia Motors could not consider the Application, and deemed it denied.

157.    As a result of the denial of the Application, the Kia Purchaser terminated the APA.

158.    If the Kia Dealership had been sold to the Kia Purchaser the Kia Purchaser would have taken over Giuffre Kia's Brooklyn point.

159.    Upon information and belief, Kia Motors wanted the Plaza Group to have the only Kia dealership in Brooklyn.

160.     Upon information and belief Kia Motors extended the Original Termination Date so as to lessen the time that there would be no Kia dealership in Brooklyn until the Plaza Group began operating.

161.     The Plaza Group began operating its Kia dealership in early 2015.

162.     Upon information and belief, Kia has not awarded Giuffre Kia's Brooklyn point to any other dealership and the Plaza Group remains the only Kia dealership in Brooklyn.

163.     Upon information and belief, Kia Motors' decision to enter into the Kia Motors Agreement was orchestrated by Kia Motors to improperly deprive Giuffre Kia of the potential proceeds from the sale of the Kia Dealership and to coerce Giuffre Kia into waiving its rights to seek review of the denial of the APA.

164.     VTL 463(2)(k) prohibits a manufacturer, such as Kia Motors, from unreasonably withholding consent of the sale or transfer of a dealership.

165.     VTL 463(2)(b) prohibits a manufacturer, such as Kia Motors, from coercing a franchisee, such as Giuffre Kia, to enter into an agreement that is prejudicial to the franchisees' rights.

166.     Kia Motors refused to consent the APA unless Giuffre Kia agreed to waive its rights to challenge a denial of the APA by Kia Motors under VTL 463(2)(k)

167.     Kia Motors' requirement that Giuffre Kia waive the right  to challenge a denial of the APA by Kia Motors under VTL 463(2)(k) was a violation of VTL 463(2)(b) and is void ab initio.

168.     Kia Motors denial of the sale or transfer of them Kia Dealership to the Kia Purchaser was in violation of the VTL.

169.     If the Kia Dealership had been sold to the Kia Purchaser, Giuffre Kia would have realized more than sufficient proceeds to satisfy the discounted amount then due to Hyundai Capital under the Hyundai Capital Settlement Agreement (the "Discounted Debt").

170.     Kia's refusal to consider the fair and equitable proposals for the sale of the Hyundai Dealership and the wrongful rejection of a qualified candidate prevented Giuffre Kia from transferring its business and resulted in wrongful restraint of trade, and unreasonable restrictions on the franchisee.

171.     Kia Motors is liable to Giuffre Kia and John Giuffre for all monies owed to Hyundai Capital which liability would have been more than satisfied but for Kia Motors' violation of the VTL.

172.     Kia Motors is liable to Giuffre Kia and John Giuffre for the excess monies which would have been realized by Giuffre Kia after satisfying the Discounted Debt but for Kia Motors' violation of the VTL, together with necessary costs and disbursements, plus reasonable attorney's fees.

SEVENTH CAUSE OF ACTION AGAINST KIA MOTORS
(Violation of NY VTL §460 et. seq.)

173.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

174.     In order to induce Giuffre Kia to waive its rights to seek review of the denial of the APA under VTL 463(2)(k), Kia Motors claimed that they would agree to consider the proposed sale of the Kia Dealership, in good faith as required by law and statute.

175.     Kia Motors' representations were false when made.

176.    Said representations were made to defraud Giuffre Kia.

177.    Giuffre Kia's reliance upon Kia Motors' representations were reasonable under the circumstances.

178.    Had Kia Motors not made such representations, Giuffre Kia would not have waived its rights to seek review of the denial of the APA VTL 463(2)(k).

179.    Kia Motors' requirement that Giuffre Kia waive the right  to challenge a denial of the APA by Kia Motors under VTL 463(2)(k) is void ab initio.

180.    Kia Motors denial of the sale or transfer of the Kia Dealership to the Kia Purchaser was in violation of VTL 463(2)(k).

181.    If the Kia Dealership had been sold to the Kia Purchaser, Giuffre Kia would have realized more than sufficient proceeds to satisfy the monies then due to Hyundai Capital under the Hyundai Capital Settlement Agreement.

182.    Kia's refusal to consider, in good faith, the fair and equitable proposal for the sale of the Hyundai Dealership and the wrongful rejection of a qualified candidate prevented Giuffre Kia from transferring its business and resulted in wrongful restraint of trade, and unreasonable restrictions on the franchisee.

183.    Kia Motors is liable to Giuffre Kia and John Giuffre for all monies owed to Hyundai Capital which liability would have been more than satisfied but for Kia Motors' violation of the VTL.

184.    Kia Motors is liable to Giuffre Kia and John Giuffre for the excess monies which would have been realized by Giuffre Kia after satisfying the Discounted Debt but for Kia Motors' violation of the VTL, together with necessary costs and disbursements, plus reasonable attorney's fees.

## EIGHTH CAUSE OF ACTION AGAINST KIA MOTORS
### (Tortious Interference with Contract)

185. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

186. But for Kia Motors' interference with the APA, the Kia Purchaser would have arranged for the purchase or lease of a service facility for use in connection with its dealership.

187. But for Kia Motors' interference with the APA, the Kia Purchaser would have purchased the Kia Dealership.

188. If the Kia Dealership had been sold to the Kia Purchaser, Giuffre Kia would have realized more than sufficient proceeds to satisfy the Discounted Debt.

189. Kia Motors is liable to Giuffre Kia and John Giuffre for all monies owed to Hyundai Capital which liability would have been more than satisfied but for Hyundai Motors' wrongful actions.

190. Kia Motors is liable to Giuffre Kia and John Giuffre for the excess monies which would have been realized by Giuffre Kia after satisfying the Discounted Debt but for Kia Motors' wrongful actions, together with necessary costs and disbursements, plus reasonable attorney's fees.

## NINTH CAUSE OF ACTION AGAINST KIA MOTORS
### (Violation of NY VTL §460 et. seq.)

191. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

192.    But for Kia Motors' interference with the APA, the Kia Purchaser would have arranged for the purchase or lease of a service facility for use in connection with its dealership.

193.    But for Kia Motors' interference with the APA, the Kia Purchaser would have purchased the Kia Dealership.

194.    Kia Motors' actions prevented Giuffre Kia from obtaining the fair value of the Kia Dealership.

195.    Kia Motors' actions were an unreasonable restriction on the sale or transfer of the Kia dealership.

196.    Kia Motors' actions were in violation of the New York Franchised Dealer Act §466.

197.    Kia Motors is liable to Giuffre Kia and John Giuffre for all monies owed to Hyundai Capital which liability would have been more than satisfied but for Hyundai Motors' violation of VTL §466.

198.    Kia Motors is liable to Giuffre Kia and John Giuffre for the excess monies which would have been realized by Giuffre Kia after satisfying the Discounted Debt but for Kia Motors' violation of VTL §466, together with necessary costs and disbursements, plus reasonable attorney's fees.


TENTH CAUSE OF ACTION AGAINST KIA MOTORS
(Breach of Contract-Good Faith and Fair Dealing)


199.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

200.    Kia Motors entered into the Kia Motors Agreement under the false pretense that it would give Giuffre Kia an opportunity to sell the Kia Dealership to the Kia Purchaser.

201.    Upon information and belief Kia Motors had no intention of considering the Application.

202.    While the Kia Motors Agreement did not require Kia Motors to approve the sale to the Kia Purchaser, Kia Motors was obligated to carry out the terms of the Kia Motors Agreement in good faith.

203.    Kia Motors failed to consider the Application in good faith.

204.    As a result of Kia Motors' failure to consider the Application in good faith Giuffre Kia was unable to obtain the fair value of its Kia Dealership.

205.    As a result of Kia Motors' failure to consider the Application in good faith the Giuffre Parties were unable to pay Hyundai Capital the Discounted Debt.

206.    If the Kia Dealership had been sold to the Kia Purchaser, Giuffre Kia would have realized more than sufficient proceeds to satisfy the Discounted Debt.

207.    By Kia Motors' unlawful and injurious acts against Giuffre Kia, Kia Motors has breached its implied duties of good faith and fair dealing, causing Giuffre Kia substantial economic deprivation for which Kia Motors is liable in damages.

208.    Kia Motors is liable to Giuffre Kia and John Giuffre for all monies owed to Hyundai Capital which liability would have been more than satisfied but for Hyundai Motors' breach.

209.    Kia Motors is liable to Giuffre Kia and John Giuffre for the excess monies which would have been realized by Giuffre Kia after satisfying the Discounted Debt but for Kia

25

Motors' breach, together with necessary costs and disbursements, plus reasonable attorney's fees.

## ELEVENTH CAUSE OF ACTION AGAINST KIA MOTORS
### (Violation of NY VTL §460 et. seq.)

210.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

211.     Pursuant to VTL §463(2)(o)(1), following the termination of the Kia Dealership, Kia Motors was required to repurchase all remaining vehicles and parts inventory from the Kia Dealership at fair and reasonable compensation.

212.     The funds realized from such repurchases were to be used to satisfy loan obligations from the Kia Dealership to Hyundai Capital.

213.     Had Kia Motors repurchased all remaining vehicle and parts inventory from the Kia Dealership at fair and reasonable compensation the Kia dealership would have realized additional funds to satisfy loan obligations from the Kia Dealership to Hyundai Capital.

214.     Kia Motors failed to repurchase all remaining vehicles and parts inventory from the Kia Dealership at fair and reasonable compensation.

215.     As a result of Kia Motors' failure to repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation Giuffre Kia and John Giuffre were unable to satisfy the outstanding monies due to Hyundai Capital.

216.     Hyundai Capital then pursued collection against John Giuffre and Giuffre Hyundai for various loans.

217.    Kia Motors' failure to repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation was a breach of the VTL and the Kia Franchise Agreement.

218.    Kia Motors is liable to Giuffre Kia and John Giuffre for the monies owed to Hyundai Capital which loans would have been satisfied but for Kia Motors' wrongful failure repurchase all remaining vehicles and parts inventory from the Kia Dealership at fair and reasonable compensation.

TWELFTH CAUSE OF ACTION AGAINST KIA MOTORS
(Violation of 15 U.S.C. §1221 et. seq.)

219.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs of the complaint, with the same force and effect as though fully set forth herein.

220.    Pursuant to the ADDCA, Kia Motors, as franchisor under the Kia Franchise Agreement, owed Giuffre Kia a duty to act in good faith in performing with or complying with the written Kia Franchise Agreement.

221.    The aforesaid acts of Kia Motors were in breach of the ADDCA.

222.    Giuffre Kia and John Giuffre are entitled to recover, in addition thereto, their attorney's fees and cost of suit pursuant to 15 U.S.C. §1222.

WHEREFORE, Giuffre Kia, Giuffre Hyundai and John Giuffre demand judgment against Defendants as follows:

(a)     On the First Cause of Action against Hyundai Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Hyundai after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $2,650,000.00.

(b)     On the Second Cause of Action against Hyundai Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Hyundai after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $1,700,000.00.

(c)     On the Third Cause of Action against Hyundai Motors, for the sum of $600,000.00.

(d)     On the Fourth Cause of Action against Hyundai Motors, for the monies owed from the repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation which would reduce the amount due to Hyundai Capital and the excess monies which would have been realized by Giuffre Hyundai after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $650,000.00.

(e)     On the Fifth Cause of Action against Hyundai Motors, for the damages suffered in the First through Fourth cause of Action, plus attorney's fees and cost of suit pursuant to 15 U.S.C. §1222.

28

(f)     On the Sixth Cause of Action against Kia Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Kia after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $3,000,000.00.

(g)     On the Seventh Cause of Action against Kia Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Kia after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $3,000,000.00.

(h)     On the Eighth Cause of Action against Kia Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Kia after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $3,000,000.00.

(i)     On the Ninth Cause of Action against Kia Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Kia after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $3,000,000.00.

(j)     On the Tenth Cause of Action against Kia Motors, in the amount of monies owed to Hyundai Capital and the excess monies which would have been realized by Giuffre Kia after satisfying Hyundai Capital, together with necessary costs and

disbursements, plus reasonable attorney's fees, but in no event less than $3,000,000.00.

(k)      On the Eleventh Cause of Action against Hyundai Motors, for the monies owed from the repurchase all remaining vehicles and parts inventory from the Hyundai Dealership at fair and reasonable compensation which would reduce the amount due to Hyundai Capital and the excess monies which would have been realized by Giuffre Hyundai after satisfying Hyundai Capital, together with necessary costs and disbursements, plus reasonable attorney's fees, but in no event less than $1,000,000.00.

(l)      On the Twelfth Cause of Action against Hyundai Motors, for the damages suffered in the Sixth through Eleventh causes of Action, plus attorney's fees and cost of suit pursuant to 15 U.S.C. §1222.

(e)      Awarding Plaintiffs with prejudgment and post judgment interest thereon;

(f)      Awarding Plaintiffs punitive damages;

(g)      Awarding attorney's fees and cost of suit; and

(h)      Awarding such other, further and additional relief as this Court deems just and proper.

Dated: New York, New York
         August 7, 2015

                                   CYRULI SHANKS HART & ZIZMOR, LLP

                                   By /s/ Russell Shanks

                                   Russell Shanks, Esq.
                                   Attorneys for Plaintiffs
                                   New York, New York 10170
                                   Rshanks@cshzlaw.com
                                   (212) 661-6800

To:
HOGAN LOVELLS US LLP
Attorneys for Defendants
Kia Motors America, Inc. and
Hyundai Motors America
875 Third Avenue
New York, New York 10022
(212) 918-3000

K & L GATES LLP
Attorneys for Defendant
Hyundai capital America
599 Lexington Avenue
New York, New York 10022
(212) 536-3900

\